UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JIMMY DONALDSON,

                Petitioner,                No. 07-CV-6518(VEB)

  -vs-                                                      **DECISION AND ORDER**

JAMES BERBARY, Superintendent; and
the ATTORNEY GENERAL OF THE STATE
OF NEW YORK,

                Respondent.
_____

## I.    Introduction

    Proceeding *pro se*, Jimmy Donaldson ("Donaldson" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state custody pursuant to a judgment of conviction following a jury trial in New York State Supreme Court (Monroe County). Donaldson was indicted and tried on charges of assault in the second degree (New York Penal Law ("P.L.") § 120.05[3]), resisting arrest (Penal Law § 205.30), criminal possession of stolen property in the fourth degree (Penal Law § 165.45), unauthorized use of a motor vehicle in the third degree (Penal Law § 165.05[1]), unlawful possession of marijuana (Penal Law § 221.05), aggravated unlicenced operation of a motor vehicle in the third degree (Vehicle and Traffic Law § 511[1][a]) and speeding (Vehicle and Traffic Law § 1180[b]). The jury returned a verdict convicting Petitioner of all of the charges except the speeding charge.

    On May 10, 2005, Petitioner was sentenced to a determinate term of seven years and a mandatory term of five years post-release-supervision for the assault conviction, to be served concurrently with a one-year sentence for resisting arrest, both sentences to be served

consecutively to a term of two to four years for criminal possession of stolen property in the fourth degree. These sentences were to be served concurrently with a one-year term for unauthorized use of a motor vehicle in the third degree and a thirty-day term for aggravated unlicenced operation of a motor vehicle in the third degree. Thus, his aggregate sentence was for a total of 9 to 13 years in prison.

On direct appeal, Petitioner raised one issue: Whether the stop of his vehicle violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Petitioner maintained that the stopping of his vehicle was impermissible in that he was not suspected of any crime and did not commit and vehicle and traffic law infraction. There were no exigent circumstances existing so as to warrant the police intrusion in this case.

In Donaldson's case, while driving in the area of Genesee and Bailey Streets in the city of Buffalo, the police visually estimated that he was traveling ten to fifteen miles per hour over the posted speed limit. After an attempt to follow the vehicle the officer pulled over the vehicle for a traffic stop. The officer was instructed by radio that the vehicle was stolen and to use caution as backup was on its way. The officer approached the car and held a casual conversation about the dangers of smoking marijuana with a child in the car as the smell of marijuana was evident to the officer. The officer asked defendant to exit the car, and Donaldson complied. The officer ordered him up against the car for the purpose of searching him, whereupon Donaldson blurted out a profane statement, which implied his knowledge that the car was stolen, saying something to the effect that, "I'm not going to jail for any stolen car." As soon as Donaldson uttered the statement, he took a swing at the officer and started running away. When caught, Donaldson fought the officer; they traded punches and kicked each other, and Donaldson even dragged the officer

across the pavement. Donaldson was eventually subdued and arrested. Upon the arrest, marijuana was found in Donaldson's pants, along with a knife.

Donaldson argued that the stop was motivated exclusively by the desire to look into whether or not the car's occupants were involved in a drug transaction. No tickets were ever issued for any speeding; that charge was an afterthought, he argued. Therefore, everything that flowed from the stop including the physical evidence seized as a result of it must be suppressed.

The People argued that the stop was lawful since any automobile traveling on a public highway "may be stopped for a 'routine traffic check' when a police officer reasonably suspects a violation of the Vehicle and Traffic Law." Speeding is obviously a violation of the Vehicle and Traffic Law § 1180(b). The degree of suspicion required to justify a traffic stop is minimal. After a hearing the trial court concluded that Police Officer Daniel O'Neill's testimony that he observed defendant's vehicle speeding was "entirely credible". Thus, the People argued, the stop orchestrated by the officer was justified by the traffic violation observed by the officer and the suppression court made the correct decision not to suppress the evidence obtained after the traffic stop because of the propriety of the stop.

By an order dated December 22, 2006, the Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed the conviction. *People v. Donaldson*, 35 A.D.3d 1242 (App. Div. 4th Dept. 2006). The court determined that the stop of Petitioner's vehicle did not violate the Fourth Amendment.

> Contrary to the contention of defendant, [the suppression court] properly refused to suppress the evidence seized by the police after they stopped the stolen vehicle in which he was riding. The record does not support defendant's contention that the court should have suppressed the evidence because the stop of the vehicle was a pretext to investigate a possible drug transaction. The arresting officer testified

at the suppression hearing that he observed the vehicle exceed the speed limit by 10 to 15 miles per hour and, "where a police officer has probable cause to detain a person temporarily for a traffic violation, that seizure does not violate the Fourth Amendment to the United States Constitution even though the underlying reason for the stop might have been to investigate some other matter" (*People v Robinson*, 97 NY2d 341, 348 (2001); *see Whren v United States*, 517 US 806 (1996) [("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, whatever the subjective intent. . . .For the run-of-the-mine case, which this surely is, we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure.")]). Contrary to defendant's further contention, the testimony of the arresting officer at the suppression hearing was not incredible as a matter of law.

*Donaldson*, 35 A.D.3d at 1243, 2006 N.Y. Slip Op. 09856. By an order dated May 1, 2007, the New York Court of Appeals denied leave to appeal. *People v. Donaldson*, 8 N.Y.3d 984 (N.Y. 2007).

This timely habeas petition followed, in which Donaldson raised the Fourth Amendment claim presented on direct appeal. Respondent, in his answer to the petition, asserts that the claim is not cognizable on federal habeas review and must be dismissed. Donaldson did not submit a traverse in reply to Respondent's opposition.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

For the reasons that follow, the petition is dismissed.

## II. Discussion

As Respondent argues, the alleged violation of Petitioner's Fourth Amendment rights is not cognizable on federal habeas review under the doctrine articulated in *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone v. Powell*, the Supreme Court held that "where the State has provided an

*opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481-82. (emphasis added). In *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977) (*en banc*), *cert. denied*, 434 U.S. 1038 (1978)), the Second Circuit developed a "litmus test" for determining when a petitioner has denied an "opportunity" for a "full and fair litigation of his fourth amendment claims." *Gates*, 568 F.3d at 839, 840; *accord Capellan v. Riley*, 975 F.2d 67, 69-71 (2d Cir.1992); *see also McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir.1983). The Second Circuit concluded, in light of the Supreme Court's holding in *Powell* that the state is only required provide the "opportunity" to the state prisoner for a full and fair litigation of the Fourth Amendment claim.

Review of Fourth Amendment claims presented by habeas petitioners would be undertaken in only one of two instances, explained the Second Circuit.  First, habeas review of Fourth Amendment claims would be warranted "if the State provided no corrective procedures at all to redress the alleged Fourth Amendment violations." *Capellan*, 975 F.2d at (quoting *Gates*, 568 F.2d at 840 and citing *McPhail*, 707 F.2d at 70). Second, "if the State has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an 'unconscionable breakdown in the underlying process,'" the habeas court should undertake habeas review. *Id.* (quoting *Gates*, 568 F.2d at 840); *accord Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never

present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").

Notably, all that must be shown is that the State has provided an opportunity to litigate the petitioner's Fourth Amendment claim; it matters not whether the petitioner actually "took advantage of the State's procedure." *Graham*, 299 F.3d at 134. Donaldson does not, and cannot contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claim.  This is because he took advantage of the opportunity to challenge the legality of his arrest by means of New York's procedure for litigating Fourth Amendment claims, embodied in New York Criminal Procedure Law § 710.10 *et seq.*, which has been held by federal courts in New York to be "'facially adequate.'" *Capellan*, 975 F.2d at 70 n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) and citing *Gates*, 568 F.2d at 837 & n. 4; *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)).

Rather, Donaldson asserts that the state courts erroneously decided his motion to suppress, and he essentially is asking this Court to conduct a *de novo* factual review of his claims. The relief requested, however, is expressly forbidden by the *Stone v. Powell* doctrine, as the Second Circuit has explained many times: A petitioner's mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an "unconscionable breakdown" occurred in the existing process in violation of the  petitioner's Fourth Amendment rights under the Constitution. *Capellan*, 975 F.2d at 71 ("[T]o the extent that [petitioner] claims that the Appellate Division erred in its ruling . . . , this would not give us authority to review his claims since a mere disagreement with the outcome of a state court ruling is *not the equivalent* of

an unconscionable breakdown in the state's corrective process.") (emphasis supplied); *Gates v. Henderson*, 568 F.2d at 840 ("*Stone v. Powell* . . . holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts.").

The Second Circuit has explicitly rejected the possibility of interpreting *Stone v. Powell* to require the reviewing court to focus on the correctness of the state court's corrective procedures for adjudicating Fourth Amendment claims, rather than on the existence and application of the corrective procedures themselves. According to the Second Circuit, to subject a habeas petitioner's previously litigated Fourth Amendment claims to further federal review would be to assume, "implicitly at least, that state courts were not responsible forums in which to bring constitutional claims such as is presented herein." *Capellan*, 975 F.2d at 71. *Stone v. Powell*, however, "expressly discouraged" it from making such an assumption. *Id.* (citing *Powell*, 428 U.S. at 493-94 n. 35) ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States.").

Here, as noted above, Donaldson took full advantage of the available state process by presenting his Fourth Amendment claim at both the suppression hearing and in his briefs to the state appellate courts. To the extent Donaldson contends that he is entitled to further review of his claims because the trial court's allegedly erroneous fact-finding, incorrect application of the law, and refusal to consider the pertinent issues during the suppression hearing, constituted an "unconscionable breakdown" in state process, the Court disagrees, given the circumstances presented here.

Although the Second Circuit has not defined precisely when an unconscionable breakdown has occurred, it observed in *Capellan* that its citations in *Gates v. Henderson* to *Frank v. Mangum*, 237 U.S. 309 (1915),[1] and to Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 HARV. L. REV. 441 (1963), "illustrate the sort of 'disruption or obstruction of a state proceeding' typifying an unconscionable breakdown." *Capellan*, 975 F.2d at 70 (citing *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y.1987); *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (*per curiam*)). As the district court pointedly observed in *Cappiello v. Hoke*, "an unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." 698 F. Supp. at 1050.

Clearly, then, a petitioner's mere disagreement with the outcome of the state courts' rulings "is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72; *accord, e.g.*, *Watkins v. Perez*, No. 05 Civ. 477(GEL), 2007 WL 1344163, *23 (S.D.N.Y. May 30, 2007) (holding that without more, rejection by state appellate court of petitioner's Fourth Amendment claims, is not an "conscionable breakdown" in the state's corrective process; noting that a "habeas court cannot grant relief simply because it may disagree with the state court's resolution of the claim"); *Woods v. Kuhlmann*, 677 F. Supp. 1302, 1306 (S.D.N.Y. 1988) ("The doctrine of *Stone v. Powell*, however, forbids *de novo* review of

---

[1] In *Frank v. Magnum,* the Supreme Court affirmed the denial of a petition for a writ of habeas corpus despite the petitioner's contention that his murder trial was dominated by an angry mob. *See* 237 U.S. at 324. Because the state forum had provided adequate procedures to remedy these alleged due process violations, however, due process had not been denied, and federal collateral review was unwarranted. *Id.* at 335-36.

state court fact-finding on a Fourth Amendment issue particularly where, as here, the petitioner can claim only that the issue was wrongly decided."); *Huntley v. Superintendent*, No. 9:00CV191, 2007 WL 319846, at *8 (N.D.N.Y. Jan. 30, 2007); *Gonzalez v. Superintendent, Sullivan Corr. Fac.*, 761 F. Supp. 973, *977 (E.D.N.Y. 1991) (rejecting habeas petitioner's claim that state court denied his request for a probable cause hearing insufficient facts asserted to warrant such a hearing was "unconscionable breakdown" in the process afforded by the state; petitioner was provided, as mandated by Stone, with a full and fair opportunity to litigate his fourth amendment claim in the state courts and "[t]he fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process").

In the present case, the Court cannot find evidence of an "unconscionable breakdown" of the Fourth Amendment process afforded him. Rather, Donaldson can claim only that, in his opinion, the Fourth Amendment issue was incorrectly decided by the state courts. The Second Circuit clearly has held that a petitioner's mere disagreement with the state courts' rulings on his Fourth Amendment issues does not suffice to demonstrate that some type of governmental obstruction amounting to an "unconscionable breakdown" in the state's corrective procedures prevented him from fully and fairly litigating his Fourth Amendment claims. *Capellan*, 975 F.2d at 72. Because Donaldson can show nothing more than that he disputes the correctness of the state court's rulings, the doctrine of *Stone v. Powell* forbids *de novo* review of any state court fact-finding on such issues.

For all of the foregoing reasons, federal habeas review of Donaldson's Fourth Amendment claim regarding the stop of his vehicle and subsequent arrest, and search and seizure, is unavailable under the doctrine of *Stone v. Powell*, *supra*. Accordingly, this claim must

be dismissed.

### III.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Hon Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:     March 16, 2011
           Rochester, New York